On behalf of the Aquiline, Ms. Tricia Smith, on behalf of the Aquiline, Mr. Scott Taylor. May I please have support? My name is Tricia Smith. I'm here today on behalf of the appellant. My understanding is that we want to focus on a conflict of interest issue in the case. And at issue is the fact that an assistant public defender represented both the mother and the minor at different points within the same proceeding. One of the issues is, in the context of termination proceedings, are they adverse parties? And I would argue to the court that yes, they are. The statute reads in part that although the proceedings under this act are not intended to be adversarial in character, they also have the right to be represented by counsel. Just because the legislature does not intend for them to be adversarial, you have to look at the reality. And the reality is that these are adversarial proceedings. What's at issue is terminating someone's parental rights. Why are they adversarial? Because they're each arguing for a different point as to if the parental rights should be terminated. The minor's attorney is arguing that it's in the best interest of the child not to be with the parent. And the parents are arguing that it is in their best interest to remain with them. Or, if the issue is reasonable progress, that they've made reasonable progress or not made reasonable progress. I think that makes them opposed in the proceedings. Would they be adversarial if the attorneys for both the child and the parent both argued that it was in the best interest that the child stay with the parent and be reconciled with the parent? I don't believe that in that case it could be, but then the state would be taking the adversarial position. So there would be adversarial proceedings in the fact that these are three-party proceedings. No, because per se conflict, it's very clear. If you represent the state, that's it. You can never, ever represent another party in a proceeding. That's correct. So this is really an issue between the guardians and an attorney who represents the parent, whether it's mother or father. That's correct. I didn't mean to imply that that's not the situation. I guess I'm just saying that within the proceedings, it still could be adversarial. But if it's a per se conflict, it doesn't matter whether there's prejudice or not. It doesn't matter whether someone's interests or rights were compromised. It either is a conflict or it isn't, right? Right. Yes. And in this case, it is. Because in this case, the minor's child or the minor's attorney was arguing that it's in the best interest to terminate parental rights, and the mother's attorney was arguing that it was not in the child's best interest. What if the guardian was arguing that it is in the best interest of the child to stay with this mother? Does it matter what position they take, or does it matter that they cannot represent two positions? I think it matters that they cannot represent two positions. I think that the statutory or the procedure in place is that the court appoints separate counsel for each party in these proceedings, one for the minor, one for the father, one for the mother. If it was truly not a conflict or an adversarial proceeding, why would a separate counsel be appointed at the initial hearing as they are in all these cases? I have two questions that are sort of related, but as attorney for the child, was this attorney who sat there and said, Herman, on behalf of Darius, was he as a guardian ad litem, or was he as attorney for the child? I'm not sure if the record's clear on that. He presents himself as the attorney for the child, and in the initial proceeding, according to the transcript, the court appointed him as counsel. At separate points in the proceeding, people who appear on their behalf represent themselves as guardian ad litem, so I'm not sure if the record's really clear. And I guess I don't know if it matters in the sense that they're still putting forth their argument to the court as to their position for the child. But isn't there a difference between a lawyer and a guardian ad litem? Yes, there is, but I believe that whether they're the attorney or the guardian ad litem, that they're still advocating for the child and what they believe is in their best interest if that's the issue they're talking about. But the guardian ad litem actually represents the court, doesn't it? Doesn't he or she? Or is there to observe on behalf of the court and follow up? Theoretically, you know, judges shouldn't ask questions at some hearings, although some do, but the guardian is there to kind of be that eyes and ears for the court? Yes, they are. They also then present their opinion to the court or their advice as to what they believe is in the best interest after they've done their investigation. I think they make recommendations to the court, and so that in and of itself is advocating for that position. All right, and that's sort of my next question. On either occasion when this person appeared, first for Tracy and then for Darius, other than identifying himself, did anything else happen for the record? On the record, no, but I think that you have to look beyond that. I think that that's part of the whole issue here is that the court says to this person, Tracy, who is indigent, and says, I'm appointing you counsel. This is your attorney. This person comes up to her and says, I'm your attorney. That means something in our legal system. And we don't know what discussions were held off the record, what they discussed before they approached the bench, and we don't know how that information that he gained could subtly change his position or what he maybe used that information on either side. Well, shouldn't this then have been something taken up by the trial court as opposed to this court? We can't fact find. We can't make any determinations. We're not supposed to do that. We're supposed to look at the record as it exists. And right now, we don't have any information about what happened outside of this record. And I don't think that you need to look at it. I think that there have been other cases such as in Stovall and Spritzer in front of this court where they say that the record sometimes is incomplete in this nature, that it's subtle and it's not easily picked up in a transcript, and that the mere fact that a single attorney represented two different parties in the same issue or the same case is enough to make that per se conflict, that it rises to that level because of the nature of what representation by an attorney means in our legal system. And then privilege, attorney-client privilege, is another issue that comes up. Here you're telling a person that this attorney represents you. You may disclose information that is, you know, we have the attorney-client privilege so that we have full disclosure, frank discussion that they can legally advise them. And, I mean, the court is right in the sense that we don't know if that necessarily happened, but I think that merely on the fact that they had this representation of both parties puts that at issue. Do we assume that this public defender, Mr. Herman, that he did his job and interviewed his client and talked to her and found out what the story was? Because as I recall, he was appointed at the time that the state was filing the petition. Do we assume that he would talk to her and find out what was going on, what was critical, what was apparent, or do we assume that he stepped up and said, okay, who are you, just stand behind me, say yes to whatever the judge asks you with respect to your rights, that you understand, and go see an investigator later? Which do we assume? Well, I don't know if we can assume one or the other. I would hope that he would talk with his client about the proceeding. But does it matter? And I guess that's when I say that I'm not sure if we can assume either one. I don't think it does matter. I think that the mere fact that he was appointed and represented the mother in court on the proceedings, and it was the type when the court was explaining to Tracy her rights and what was going to happen in the proceedings, I think that Tracy, here is this person representing her, and then she later down the road sees him representing the minor in the exact same case. Is there any explanation in the record why the trial court seemed to or did appoint attorneys to different clients or different parties? It seems that the common procedure is that Winnebago County has within the public defender's office three different conflict divisions and that the court appoints a person from each conflict division to represent the different parties in the case. That may be the standard procedure, but in this instance, it seems like the procedure wasn't followed to the extent that somebody put it another way, the conflict divisions didn't seem to help here. That's correct. It seems in the initial proceedings that there was someone appointed from each conflict division, but then I don't know what happened in the meantime. Someone switched from one conflict division to the other, but someone from a different conflict division appeared on behalf of the minor later after appearing on behalf of the mother. Who dropped the ball here? The attorney, Mr. Herman, the trial court? I would say that Mr. Herman, in the sense that he should know which case that is being called and who he represented on that case. It may be difficult for the court to keep track of each conflict attorney on the hundreds of cases that they have before them, but I believe that Mr. Herman should have realized that he previously had represented Tracy in the proceeding. Did he file an appearance with respect to each role that he played, or is it just one appearance by the public defender? I mean, the public defender's name is on the appearance, or is it an individual's? From what I can recall from the record, I don't know if there was an official appearance filed in the court record. If he didn't file an appearance, what's he doing, stepping up? Again, I'm not sure. Is that just sort of the way they do it? I can only go from what's on the record. It's okay. If you don't know, you can say you don't know. I don't know, but from my recollection of looking at the record, and I don't have it, I turned it into the court, I don't recall specifically there being an appearance. Fair enough. I guess one issue I would also like to address, just that the state seems to make a public policy argument in their brief regarding that the court has previously found that attorneys within the same office can represent co-defendants, and I guess I would just say that it's such an important issue. I don't know. It doesn't seem burdensome as to what the remedy is. I'm not arguing that the public defender office can't represent each party, but just that have the conflict division run as it's supposed to and each represent the particular party. What about the fact that the Supreme Court, by rules, has placed some high priority on these types of cases, finality on behalf of the minors, no matter how old or how young they are, and if we accept your position, this, in essence, almost starts over. Do we have to, do we have any obligation to weigh this priority that's been set on the best interest of the child against this, what appears on this record? He appeared one day and said, I'm here on behalf of Respondent. In either the next appearance or two appearances later, I'm here on behalf of the minor, and the minor is about three to four years old at the time and probably hasn't even seen this man. I mean, it's an assumption, but it's probably a safe one. Even if he hasn't talked to the minor, he's read the reports, hopefully, and he's arguing his position as the GAL, but I would say that, yes, it's extremely important. I understand the Supreme Court rule as to why it's necessary to expedite these cases, but you also have to balance that with people's fundamental rights, and there's a fundamental liberty that parents have a right to parent their child, and it's such an important issue, and to terminate someone's rights is extreme, and I think that you have to do everything properly to protect that right for that person. So in this case, I would say that if it does have to start over, it does, and I think that that outweighs expediting the proceedings. Does it have to start over, or would it be an equitable position from your perspective to remand the proceedings at the point at which Mr. Herman first represented your client? I would say that that would be an equitable position, but I believe that it also is the first time that she's – I think it would be fair to start at the point of the prior termination petition, which is where the conflict first occurs. And to the best of your knowledge, there haven't been any permanency reviews since this case ended that your client was involved in. Maybe the state's been involved with the guardian or the foster parents, but your client hasn't been involved. So nobody's monitored her progress, nobody's had any contact with her? Not that I'm aware of. I have had contact with her, and I have advised her to continue with services. I don't know if that would – I mean, it's not official, obviously, but – Thank you. All right, thank you very much. You'll have an opportunity to make a rebuttal. Thank you. Mr. Jacobson. Good morning, Your Honor. Good morning. May it please the Court. I think there's been some confusion as to exactly what occurred and when, and if given the opportunity, I'd like to clear that up. The allegation of a conflict of interest, particularly a per se conflict of interest, is very strong, and obviously the remedy that would be required if a per se conflict of interest occurred would also be very strong. But in this situation, I think nothing speaks more strongly to the fact that a conflict of interest didn't occur than the allegation as to supposedly when it occurred. On November 24, 2009, Assistant Public Defender Michael Herman stepped up in court and represented Respondent. Then in February 2010, he represented the minor. In November 2009, he represented Respondent. February, he represented the minor. That means that the only person who would technically be able to raise a per se conflict of interest claim would probably be the minor in this situation. That's not necessarily true, because as a guardian, he's there to tell the court what he's observed. Well, as Justice Hutchinson pointed out, there is a distinction between stepping up and representing a party and being appointed as a guardian at law. We don't know whether he used the term stepping up. Do you know what happened during the course of his representation of Respondent? I do from reading the record. No, what he did to represent his client. As you know, as every lawyer in Illinois, you don't just step up in court and represent your client. There's much that goes on before he ever goes to court, and that's what we don't know. But the nature of the appellant's claim is a per se conflict of interest. Correct. That would presuppose prejudice in a situation like this. No, it excuses the party's obligation to prove it. That's correct, but my point, Your Honor, would be that logically, if there were such a situation, I mean, that's really the nature of the rule that the Supreme Court fashioned with Glazer and our courts adopted in Stovall is that the situation is so glaringly obviously prejudicial that we don't undertake a calculation of prejudice. We just say prejudice is presumed. But in this situation, counsel represented the mother. If we look at the record, really what occurred was A.P.D. Harmon stepped up in court, represented the respondent. If we can truly call it a representation, that's debatable. But he stepped up in court nonetheless. Are you suggesting that the public defender didn't do his job? No, I'm not suggesting he didn't do his job. I'm saying there's an unrepresented party. If you look at, this is in pages R, it was R89 through 97 of the record. And I'm not trying to convince words here because I do think that this is a very serious issue. But what I'm saying is we might be making more out of it than we really need to be. That's my point. We might, but we don't know. Well, and that's my point too, Your Honor. If this were genuinely a very serious issue, as the appellant is trying to claim, she probably would have made an actual conflict of interest argument. She would have said. She's unfit. We've established, based on your record, there's a finding that she's unfit to be a parent. She has mental disorders. She doesn't take her medication. And she's going to say, excuse me, Judge, I think that this attorney has a conflict. Isn't that a little unreasonable? Well, nevertheless, the appellant makes this argument that all the other attorneys that came after A.P.D. Herman are constitutionally ineffective for failing to object to A.P.D. Herman's representation. I mean, surely we would rely on their reasoned judgment to say there's something seriously wrong here. All these other conflicts attorneys who are well versed in the law. I mean, if this were truly a glaring and serious issue, is everybody wrong? That's for us to decide. Absolutely. But, no, what I would submit to you is that simply, I mean, the nature, if you look at cases like Stovall, I mean, even all the way up to S.G., which I think is the case probably closest to the situation, I mean, factually, this case isn't like any other. Why shouldn't we follow S.G.? Because S.G. is a different situation entirely. S.G. is a situation where, and like I said, if you look at the dates here, first of all, I mean, It's not necessarily the dates. It's who came first is what your point is, correct? Yes, ma'am. Because we're talking, you know, four months, four years. It really doesn't make any difference. That's true. It's who came first. It's who came first, but also if you look at S.G., it's who represented and responded in trial. Right. The point that my brief makes is that all of this case law about Sixth Amendment conflicts, per se conflicts of interest, just got imported sub-selencio, particularly in D.G. I'm sorry, D.B. and S.G. Your point is whether it's a constitutional right to an attorney versus statutory right? It's not even that. I mean, I think we would all agree that any time an indigent party steps into court, there is some legal right, some constitutional right to representation. But the point is that the per se conflicts model is really a judge-made rule, and the public policy reasons behind it are obviously very strong. No one is debating the rule from Stovall or from Glaser. But the question is, why does it apply in a termination case? And exactly what are the interstices of the application of it? Now, D.B. and S.G. just gloss right over that. They say, yeah, of course it applies. And it applies here because, well, a party wasn't actually in D.B. They say it doesn't apply here because a party wasn't represented simultaneously. No, I think what D.B. talks about it, pardon me, is that the respondent mother was made aware of the conflict and waived it. If there had been a waiver, I mean, you can waive a conflict with your attorney. Your Honor, with respect, I don't believe that was – D.B. was about, if I remember correctly, in D.B., which was the Fourth District case, D.B. was a situation where the court just said, no, there was no conflict because Mom and the minor were not represented simultaneously, relying only on one Illinois Supreme Court case. Correct. They found that as well. But in D.B., if I'm not mistaken, in the course of the trial court proceedings, the attorney informed the mother on the record that he had previously represented the minors. That could be – I might be getting that confused with C.C. as well. Okay. But don't you think that makes a difference if there had been a waiver? I mean – Absolutely. I think the fact that there is a waiver in these types of situations also speaks to, I mean, really sort of an interesting other aspect of these situations, which is that it does benefit the represented party to have somebody who may have learned information through a conflict of representation. I mean, the fact that we allow individuals – How would that benefit this particular individual here? Well, let's say, for example, that Mom's attorney – and this presupposes a different time frame. Now, granted, because A.P.D. Herman represented Mom first, not the minor. But let's say that – and also this presupposes that, again, that A.P.D. Herman was a guardian ad litem as opposed to just an attorney who represented the minor. For a court proceeding, and in particular this court proceeding, the one that happened in February, was one where Dad was finally located, brought into court, and arraigned, which is what I believe Judge Heisler would have wanted back at the November court proceeding, which is what he was expecting. That frustration kind of comes to the record from Judge Heisler. But nevertheless, if we're presupposing those two things, a different time frame, and the fact that A.P.D. Herman was the minor's guardian ad litem, then perhaps as a guardian ad litem who represents the minor, then maybe Mom would want to waive the conflict because, I don't know, maybe through his interactions with the minor, he learned some information that would be advantageous to Mom. It might be, but nobody ever put that on the record. I think there are a lot of things that are not put on the record. But my point is, that's – That closed container that we're stuck with. Indeed. And that's one closed container I would want to depart from, not just because I represent the state in this case, but because I think the per se conflicts rule is such an important rule, and more importantly because of the implications it would have in a whole stream of cases like this. I mean, my point simply is, I think it's unfair from a perspective where we're attempting to administer to an entire system of justice for someone to simply say there's a per se conflict in this situation because an attorney represented two parties in a three-party process at hearings four months apart where nothing substantive occurred, and then say, well, the whole situation's got to be reversed. It's got to go back to either the petition stage or the November hearings or wherever you are in the permanency process. And then what's to come of all the work that was done, all the evaluations, all the social work, all the trial work, all the preparation, the hard work of the attorneys on all three sides? And more importantly, I think the per se conflicts rule – First, should we look at how long a trial was when we decide whether or not it should be reversed? No, no, Your Honor. Should we look at the amount of work and how many experts were called? No, Your Honor. That's not at all what I'm saying. What I'm saying is that if you look at the nature of the three-party proceedings and terminations, if you look at the unique role of the guardian ad litem, and then you look and contrast that to Stovall and Glaser and the cases that generated the per se conflict of interest rule, they simply aren't coextensive. You could easily apply the per se conflict of interest rule in a case. Let's say, for example, that the reverse situation occurred. Let's say that A.P.D. Herman represented the minor first and then represented mine. Different story. There it would be more – I think it would be more likely that you could say that there's a hint of a per se conflict of interest. But I think it would be more likely that this court would probably be looking at an actual conflict of interest, one in which my opponent could come in and say there's an allegation of prejudice. Also, I think you're speculating because I think it depends on what the information is that the attorney brings with him. If you can imagine a card game and somebody is standing behind player A and sees his hand and then goes and stands behind player B and sees his hand, if he advises B, depending on what he tells him, whether he gives him good news or bad news, he's still advising him. And to the extent that he's advising him that the other person is going to lose if you call them, it's a detriment to the loser. It's a benefit to the winner. But the other situation is he could say exactly the opposite and that they're going to win, so you might as well fold, which means that the card player A is still at a disadvantage because that individual could have gotten maybe more money had the person continued to bet. So the point is it depends on what the information is that is supposedly being transferred. And as Justice Gorganson has pointed out on several occasions, we don't know whether it's positive or negative information. I absolutely agree with you, but I guess that all stems from the assumption that they're all playing against each other. And you don't believe that this is an adversarial proceeding? No, I actually don't. Are you a parent by any chance? No, Your Honor, I'm not. I do have two cats, but that's about as close as it comes. Well, if you're a parent and your wife's here in jeopardy, you might consider it a proceeding that's adverse to your interests. I certainly might. I will say this. I have done a few abuse and neglect cases, and I think we've all been around the block a few times as far as those cases are concerned. I think that every case needs to be judged on the strength of the evidence in that case. That said, I don't think you can simply ignore the fact that, you know, of what went on in these particular proceedings. And that's what the per se conflict of interest rule asks us to do as lawyers and judges. It says put blinders on, don't look at the substance of the proceedings itself. And that, I think, is heavy-handed in the context of a termination case. What about my question that's now added to it? Yes, Your Honor. If you can knowingly waive a per se conflict, and that's established that it can happen, that means that it's still serious, but it's not as serious if you can waive it. If you could never waive it, it's pretty locked in stone, and I don't have a problem with that. But we recognize that we can. What about, then, what is our obligation? If it's not locked in stone and somebody could give up that right, what's our obligation here with reference to the public policy about children having stability? Should that step on top of this? Should this weigh heavier than what might have been a conflict which could have been waived? Well, I think you raised that in response to my opponent's argument about how the remedy in this case wouldn't be burdensome. That was one, yes. Well, I'm actually not sure necessarily as to what the question is that you're asking me about. Would the remedy work? Well, do we have to consider the public policy and what is best for this child in terms of stability? Because that's the purpose of this particular statutory authority and the rule authority that says these take priority, they get done in X amount of days. You can't just delay these. I think that would have to be balanced against two considerations, then. First would be this court would have to depart from the plain language of the Juvenile Court Act, and particularly Section 1-5, Subsection 1, which says that these proceedings are not designed to be adversarial. I mean, we may take whatever cynical view of Juvenile Court Act proceedings and termination proceedings that we want to, whether they're based on our own personal parenting experiences or our own personal advocacy experiences, but the plain language of the statute that we are not allowed to depart from says that they're not supposed to be adversarial. The other thing is, and I think the more important point that you're raising is, is that there is supposed to be finality to these proceedings. I don't think that means finality at any cost. I think that means that we're supposed to reach a just result. And in order for us to reach a just result, we look at the evidence in the case. That said, I think that's what distinguishes this case from S.G., and I think that's what distinguishes the result in this case from S.G. Because in S.G. I'm sorry. Judge, you're the one that's allowed to interrupt me, so. Not always. If these proceedings are not adversarial, then what's the problem with having, or is there a problem with having one attorney representing both the child and the parent or parents whose rights are being terminated? If it's not adversarial, how can there be a conflict of interest? Well, that was the point that I made in my brief. I think this kind of lets me finish my answer to Justice Hutchinson's question and then address the answer to yours, which is I think what distinguishes this case from S.G. is that the alleged per se conflict of interest, or any conflict for that matter, was not allowed to persist or infect any of the trial proceedings itself. So theoretically, any remedy that the respondent would be asking for didn't taint the proceedings themselves. They didn't taint the introduction of evidence. It had nothing to do with the substantive result in any of the proceedings in this case. All that occurred, if you look at the record, the supposedly conflicted aspects of the record, are public defenders stepped up and they got dates. So the other part of this that goes more directly to your question, though, is I think if you look at the per se conflict of interest rule, what it's designed to prevent are situations, Sixth Amendment situations, where you have a prosecuting attorney who now becomes a defense attorney or an attorney with contemporaneous representation conflicts. And it is a judge-made rule, but it is a live rule. It is a rule that adapts to situations, and we call them like we see them. You didn't answer my question. I'm attentive to you, Your Honor. My question was if this is not an adversarial proceeding, then why can't one attorney represent both the parent or parents and the child as well if they're not adversarial? If they're not adversarial, I gather what you're saying is there can't be a conflict of interest. Well, this Court has said before that in the context of an adoption proceeding, even the State isn't considered an adversary. This Court said that. The rationale behind that being that proceedings, adhering to the plain language of the statute, proceedings commenced under the Juvenile Court Act and then carried over into the Adoption Act are not supposed to be adversarial. Well, one other question. If it's not adversarial, why does the public defender have a conflicts division and have or at least attempt, even though it would appear in this case it didn't, it wasn't as successful as it would be hoped it could be or would be, have a conflicts division? What's the point of having a conflicts division if it's not adversarial? Your Honor, there are a lot of State's attorney's offices that have special prosecutions divisions, and I would say that some people in those divisions aren't necessarily all that special. So, I mean, what we call particular offices really shouldn't govern the application of judicial policy. I think, ultimately, you could recognize, obviously, that there would be a danger of one party giving information to another. But the point is that these are three-party proceedings. I think the more direct example of a conflict of interest in the nature of Stovall, Spreitzer, Kester, you know, would be where the State's attorney all of a sudden becomes Mom's attorney, or the public defender or the private attorney who represents Mom gets elected as State's attorney the next day. And if it's not adversarial, who cares? Well, I don't think... Well, it either is or it isn't. If it's not adversarial, it doesn't matter. Because all of those rules where the State's attorney becomes the PD, the PD becomes the State's attorney, that's all in criminal. And if it's not adversarial, it doesn't matter. It can't be a little bit adversarial. It either is or it isn't. Well, then I would ask this Court, how would this Court then look at cases like DB and SG in that situation? They're adversarial. Okay. And then if that's the ultimate point that we're getting at, how do we treat the language in the Juvenile Court Act and in the Adoption Act? Well, I would suggest that there's a difference between a statute that says this is not an adversarial position versus the legislature saying it's not intended to be. Okay. It is what it is. Fair enough. I guess the only question that I have then would be in this situation where the respondent was represented first and then later the minor was represented, does the respondent have standing to bring a conflict claim? Same question. They do in divorce, I know that. If counsel could... Which are intended, not which are... Well, those aren't adversarial proceedings. We know that divorce is one of the most loving, amicable proceedings in the world. Also not intended to be adversarial. Right. No, absolutely. They're civil. Civil. They're courteous proceedings. But in any event, if a person or an attorney consults with one party and then represents the other side, the party with whom the attorney first consulted can demand the withdrawal or the discharge of the counsel who's representing the opposing side. That's boilerplate law almost. The dilemma is that we don't know what Mr. Herman spoke to his client about. We don't know what he learned. We don't, I would assume, PD's office, the GAL has one file, respondent mother has a different file. He had access to that file and had access to information that he might not have gotten as a GAL. I don't know. I guess we're... How does he put the China wall up and say, okay, well, now I'm the GAL, you know, judge, wink, wink, nah, nah, this is what I think. And it's not based on anything I learned as a result of representing the mother. I guess the only thing that I have difficulty with in grasping is how that affects his ability to go into court and ask for a date. Well, you know what, you keep saying that. Yes, sir. If he asked for a date, if he had stepped up and said, good morning, Your Honor, Mr. Herman, on behalf of Attorney Smith, who represents mom, Ms. Smith has a flat tire this morning. She's asking for a date, end of discussion. He didn't. I'm here representing mom. He was appointed to represent her. Ma'am, this is your attorney. I think there's a difference. Because I'm not saying that every time you step up, you know, on behalf of a fellow in your office and say, you know, so-and-so's not here today, so-and-so's on vacation, so-and-so had a personal problem, judge, we need a date. That's not the same thing as representing a client. But there's nothing in the record that would show that's what happened here. If there was, I'd be much more amenable to your position because you keep calling it stepping up. You may step up when you represent a client and get a date, but if you're stepping up, which is different to me than stepping up on behalf of someone else in your office and saying, I'm here for so-and-so, he or she can't be here today, whatever, we just need a date. Or, yes, judge, I'd be happy to do the order, you know, an evaluation to be done, yes, sir, whatever, here's the order. That's not representing the client. That's really stepping up for your fellow worker. But we don't know that that's what happened here. So you don't see SG as being different? Actually, I think this case could be construed as worse than SG. Because here, if Mr. Herman learns information about mom, that he then carries over as a pipeline to the court as the GAL, is worse than having represented the kids and then representing mom. You can make the argument either way. Limited only to these two cases and the regular public defender and regular. I'm sorry, you mean two appearances? Two, I'm sorry, yeah, even though it's limited only to these two appearances and the regular GAL, regular public defender, back in court representing mom for the unfitness hearing. If you're not the regular, that's the point. If he stepped up and said, I'm here for the regular guy and I just need a date, that's different than representing somebody. But the rest, I mean, my point is, and the reason I say stepping up is because having read the full record, I know, and knowing the people, the public defenders in Winnebago County, I know who the normal people are. But I don't know the public defenders in Winnebago County. This is the record they created. Right. It's the record we're stuck with. But did he present, did he ever present anything other than his name and who he represented to the court? No, he didn't. The only thing that would be of note, I guess, is that the clerk says that on R-90 of the record that Mike's the PD this afternoon, and that would be in reference to Mike Herman, and then he steps in to represent, this is when he represents responding in November. Thank you. Any other questions from the court? No, your time's up. Thanks. Just to make a few brief comments, and I would answer any questions you may have, but I just believe that it is more than just stepping up like you had just stated. I think that we don't know what happened, if he met with her in the hallway, how long he was on the case. You know, he may have talked to her a couple of times between the meetings, and I think the fact that we don't know and the importance of having an attorney represent you make this the per se conflict, and I guess I would just ask the court to follow the reasoning in SG. But what did he, what did Mr. Herman ever present to the court other than his name and who he represented? But representation goes way beyond just presenting his name to the court. It is reading the report, looking at the file, talking with the person beforehand. If he found anything out that, as in that one moment that he said, I represent, that he passed on on behalf of the child, who was his second client, as it were, or his second responsibility, did he pass anything on to the court that he learned that would impact one way or the other? Not necessarily to the court, but he possibly could have then passed it on, not even intentionally, to the attorney that handled the case after him, or to the mother's attorney when the attorneys talked prior to the cases. I think that... So then, even though we have a conflicts division, we should not assume that they don't talk to each other, that they do, you know, converse about these cases, notwithstanding who they represent? Well, I think that they can talk to each other, but then there's also attorney-client privilege, that he gained information from his representation of the mother. And just because you talk with other attorneys doesn't mean that you disclose information that is privileged. And he possibly used that, then, in his representation of the minors. And I guess the fact is we just don't know, and this is all, I guess, assuming on their behalf. But I think his representation runs deeper than just standing next to the person in court. Any other questions? I do. I mean, you're asking for a very harsh remedy. Yes. How do you justify that? I think it's justified by the fact that, in part because this is an indigent client, I think we need to look at scrutinized cases more carefully than... Because I don't think as a private counsel, I don't think a private counsel would have come in on both sides on this case. And I think that the importance of having an attorney represent you in a matter and the information that you gain from the attorney or that you give to the attorney rises to the level of importance that it does cause or it calls for this type of remedy. Have you read Baby Richard? I have not read the case, but I'm familiar with the situation. I read it because, in that instance, the parental rights of the father were taken away, and I believe in a per curiam decision it was deemed to be a very harsh resolution under the circumstances. Yes, Your Honor. Any other questions? Thank you. The case will be taken under advisement.